IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 13, 2021

**STATE OF TENNESSEE v. ELVIN PORTILLO**

**Appeal from the Criminal Court for Davidson County**
**No. 2019-C-2367     Cheryl A. Blackburn, Judge**

_____

**No. M2020-01179-CCA-R3-CD**

_____

Defendant, Elvin Portillo, entered into an agreement whereby he pled guilty to vehicular homicide by intoxication, leaving the scene of an accident with death and reckless endangerment. Four remaining counts were dismissed. In accordance with the plea agreement, the trial court held a sentencing hearing to determine the length and service manner of Defendant's sentences. After a sentencing hearing, Defendant received an effective sentence of 16 years. In this appeal, Defendant asserts that the trial court erred in ordering consecutive sentencing. Having reviewed the entire record and the briefs of the parties, we find no abuse of discretion and affirm the judgments of the trial court. However, because the record does not contain judgment forms for the remaining counts, if these judgments do not exist, we remand to the trial court for entry of judgment forms to reflect dismissal of those counts.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and J. ROSS DYER, JJ., joined.

Jay Umerley (on appeal); and Nick McGregor (at trial), Nashville, Tennessee, for the appellant, Elvin Portillo.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; and Kyle Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

The following facts were established at the plea hearing: Around 7:00 p.m. on May 4, 2019, police officers responded to reports of a car fire on Interstate 24 in Nashville, Davidson County. The vehicle had been involved in a two-car accident. When the officers arrived, one of the cars was engulfed in flames. Three people were restraining Defendant and his passenger on the ground. One of the witnesses at the scene stated that Defendant threw beer cans out of the car window, exited the vehicle, and attempted to flee the scene with his passenger. The witnesses to the accident caught the men as they were fleeing. The victim, Bobby Douglas, was the driver of the car that was engulfed in flames. The victim was still in the flaming car as Defendant and his passenger fled. The victim died on the scene, and his passenger suffered minor injuries.

When the police officers approached Defendant and his passenger, they immediately identified a strong odor of alcohol and noted that Defendant had "red, bloodshot, and watery eyes." Defendant also stumbled on his way to the police car. The police officers drove Defendant to a nearby hospital for medical attention, and the hospital staff performed a horizontal gaze nystagmus test on Defendant. He indicated for intoxication on all clues. The police officers read Defendant his *Miranda* rights, and Defendant admitted to drinking three 16-ounce beers between 3:00 p.m. and 4:00 p.m. After obtaining a search warrant, Defendant's blood was drawn. Defendant's blood alcohol content was determined to be .186. Because one hour and forty-seven minutes had passed from when the officers arrived on the scene to when they obtained a search warrant for Defendant's blood, the toxicologist performed a "retrograde extrapolation." The toxicologist estimated Defendant's blood alcohol content to be .203 at the time of the accident.

During the sentencing hearing, the victim's wife and daughter both testified as to the good character of the victim and the positive impact he had on their entire family. The victim's wife testified that since the victim passed away, she had had trouble sleeping, was on medication, and was seeing a therapist. The daughter testified that the victim had eleven children, twenty-seven grandchildren, and four great-grandchildren. The victim's wife and daughter both stated that they wished for the trial court to impose the maximum sentence possible.

The thirty-two-year-old Defendant, who has twice entered the United States illegally, testified that he grew up on a farm in Honduras. When he was nineteen, he decided to "migrate" to the United States to give his family a better future. This was his first illegal entry.

Defendant testified that he began drinking due to both "sadness and happiness" when he was twenty-three years old. He claimed that he did not realize his drinking was an issue until the events giving rise to his offenses occurred, despite his prior conviction for driving under the influence in 2012.

On cross-examination, Defendant admitted that he drank more than three beers prior to driving his car on the date of victim's death, contradicting what Defendant told the police after the accident. Defendant testified that "the first thing that came to mind was to flee because [. . . he didn't] have a driver's license and [he was] illegal." Defendant testified that he did not know the victim's car was on fire, or he would have attempted to help the victim. Defendant admitted that "[he] made the mistake of focusing only on fleeing."

In May of 2012, Defendant was convicted for driving under the influence, placed on probation, and deported back to Honduras. Defendant testified at the sentencing hearing that he again illegally entered the United States "[a]pproximately two months [after being deported]." Defendant spent six undetected years in the United States after returning from his deportation, during which time he did not make any attempts to comply with his probation. On March 22, 2013, a violation of probation warrant was issued for Defendant. The issuance of this warrant tolled the term of Defendant's probation. As a result, when Defendant committed the offenses on May 4, 2019, he was still of on probation for the 2012 offense.

At the sentencing hearing, the State argued that Defendant should receive the maximum punishment because he had a prior conviction for driving under the influence, had entered the country illegally, and had left a man burning in a car. The State argued further that Defendant's sentences should be served consecutively because Defendant was a dangerous offender, and Defendant committed the offenses while on probation. *See* T.C.A. § 40-35-115(b)(4)(6). Defendant's attorney argued that factor six should not apply because Defendant was deported after his first driving under the influence conviction and was never released to comply with the terms of the probation. The trial court responded that Defendant had been in the United States previously for some time, and that "he did have an opportunity [to comply with the probation]. He just never got arrested." In finding that Count 5 (Reckless endangerment) should be served consecutively to Counts 1 (Vehicular homicide) and 3 Leaving the scene of an accident with death), the trial court relied on factor six, despite discussing factor four of Tennessee Code Annotated section 40-35-115(b). The trial court noted that the *Wilkerson* factors associated with factor four were a "close call" in this case and did not engage in the *Wilkerson* findings. (*See State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995)).

The trial court ordered a twelve-year sentence in Count 1, a two-year sentence in Count 3, and a two-year sentence in Count 5. Pursuant to the mandatory requirements of Tennessee Code Annotated section 55-10-101(b)(2)(B), and the terms of the plea agreement, the trial court ordered Defendant's sentence in Count 3 to be served consecutively to Count 1. The trial court further ordered that Defendant's two-year sentence in Count 5 be served consecutively to his fourteen-year sentence in Counts 1 and 3. All sentences were as a Standard Offender. The resulting effective sentence is 16 years at 30%. Defendant appealed.

*Analysis*

Defendant argues that the United States will deport Defendant at the end of his sentence. Thus, Defendant concludes, the trial court's application of a need to "protect the public" as a basis for consecutive sentencing, is not logical. T.C.A. § 40-35-115(b)(4). In framing his issue in his brief, Defendant asks the question, "Is it logical to conclude that postponing [Defendant]'s deportation will protect the public?" Defendant argues elsewhere in his brief that because "[Tennessee Code Annotated section 40-35-115(b)(6)] established consideration for consecutive sentencing, the trial court followed with a *Wilkerson* analysis." The State maintains that the trial court acted within its discretion in aligning Defendant's sentence consecutively in Count 5. We agree with the State.

When a defendant challenges the length or manner of service of a within-range sentence, this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). This presumption applies to "within-range sentencing decisions that reflect a proper application of the purposes and principles of the Sentencing Act." *Bise*, 380 S.W.3d at 707. A trial court abuses its discretion in sentencing when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

In reaching its decision, the trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in his own behalf; and (8) the potential for rehabilitation or treatment. *See* T.C.A. § 40-35-102, -

103, -210(b); *see also Bise*, 380 S.W.3d at 697-98. Additionally, the sentence imposed "should be no greater than that deserved for the offense committed" and also "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4).

If a trial court finds by a preponderance of the evidence that a defendant fits into at least one of the seven categories in Tennessee Code Annotated section 40-35-115(b), it may order multiple offenses to be served consecutively. T.C.A. § 40-35-115(b). This Court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1); *see State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). In addition, the length of a sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2); *see Imfeld*, 70 S.W.3d at 708. If a trial court finds by a preponderance of the evidence that even one factor from Tennessee Code Annotated section 40-35-115(b) applies, the trial court may order sentences to run consecutively. T.C.A. § 40-35-115(b).

The record and transcript from the sentencing hearing reflect that the trial court properly considered all of the factors set out in Tennessee Code Annotated section 40-35-210 prior to fashioning Defendant's sentences. The trial court properly sentenced Defendant to a sentence of twelve years in Count 1, two years in Count 3, and two years in Count 5, all individually a within range sentence. Defendant does not contest these findings.

With respect to consecutive sentencing, the trial court ordered the sentence in Count 3 to be served consecutively to the sentence in Count 1 based on the requirements of Tennessee Code Annotated section 55-10-101(b)(2)(B) and the plea agreement. Defendant does not contest this sentencing alignment.

It is the consecutive sentencing alignment in Count 5 that Defendant contests. Although argued by the State at the sentencing hearing, the trial court did not base the consecutive sentencing on Tennessee Code Annotated section 40-35-115(b)(4). The trial court found that Defendant was on probation at the time he committed the offenses and stated that was the "appropriate enhancing for consecutive sentences …. that [Defendant is] sentenced for an offense committed while on probation." Consequently, the trial court ordered Count 5 to be served consecutively with Counts 1 and 3 based on the fact that Defendant was being "sentenced for an offense committed while on probation." T.C.A. § 40-35-115(b)(6). Defendant does not dispute the trial court's decision to order consecutive sentencing in Count 5 on the basis of this finding.

Defendant argues instead that the trial court failed to properly apply the *Wilkerson* factors prior to ordering consecutive sentences. When imposing consecutive sentences based on the dangerous offender classification, Tennessee Code Annotated section 40-35-115(b)(4), the trial court must conclude that the proof establishes that the aggregate sentence is "reasonably related to the severity of the offenses" and "necessary in order to protect the public from further criminal acts." *Id*. (quoting *Wilkerson*, 905 S.W.2d at 938). The *Wilkerson* factors are only applicable to Tennessee Code Annotated section 40-35-115(b)(4). *See State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999) (stating that the *Wilkerson* factors are confined to cases involving consecutive sentencing under Tennessee Code Annotated section 40-35-115(b)(4)). Here, the trial court ordered consecutive sentencing on the basis that Defendant was on probation, not because he was a dangerous offender. No *Wilkerson* analysis is required. The trial court did not abuse its discretion. Defendant is not entitled to relief on this issue.

### *Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed. The matter is remanded to the trial court for entry of judgment forms for Counts 2, 4, 6, and 7.

_____
TIMOTHY L. EASTER, JUDGE

- 6 -